THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ALBERT E. SMITH, Appellant.

Third Department, April 28, 1943.

*Samuel Levy* for appellant.

*William M. Nicoll, District Attorney (Adam Ogonowski* of counsel), for respondent.

HEFFERNAN, J. On August 12, 1942, an information in the following form was filed against appellant in the Children's Court of Schenectady County.

" Children's Court,
County of Schenectady, } *ss:*
State of New York.

Frank Wylie, *upon information and belief,* being duly sworn, deposes and says: That he resides at No. 422 Michigan Avenue,

in the City of Schenectady, County of Schenectady, that Albert E. Smith, at the City of Schenectady, and Town of Rotterdam, in the County of Schenectady aforesaid, and the date being on or about and between the 1st day of July, 1942, did feloniously, wrongfully, unjustly, unlawfully, wickedly, maliciously and knowingly violate Sections 483 and 494 of the Penal Law of the State of New York, in that he did endanger the health and morals of a child under the age of 16 years to wit, one Anna Mae Crawn, in that at divers times he did entice said child in his car and did cause said child to practice sexual practices on his own body and the body of said child.

FRANK WYLIE.

Taken, subscribed, and sworn to before
    me this 12 day of Aug. 1942.
        Edmund Trojakowski,
           Clerk of the Children's Court.''

On that document alone a warrant was issued for appellant's arrest. Upon arraignment he entered a plea of not guilty and moved to dismiss the charge on two grounds: (1) that the information fails to charge the commission of any crime; and (2) that the court had no jurisdiction of the offense charged. Objections were overruled and after a trial appellant was adjudged guilty of violating section 483 of the Penal Law. The charge of violating section 494 was dismissed. Section 483 provides: '' A person who: 1. Wilfully causes or permits the life or limb of any child actually or apparently under the age of sixteen years to be endangered, or its health to be injured, or its morals to become depraved; or, 2. Wilfully causes or permits such child to be placed in such a situation or to engage in such an occupation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, Is guilty of a misdemeanor.''

Section 148 of the Code of Criminal Procedure provides that where an information is laid before a magistrate of the commission of a crime he must examine on oath the informant and any witnesses he may produce and take their depositions in writing and cause them to be subscribed. Section 149 is to the effect that the depositions must set forth the facts tending to establish the commission of a crime and the guilt of defendant.

By section 150 the magistrate is required to issue a warrant if satisfied from such depositions that a crime has been committed and that there is reasonable ground to believe defendant guilty.

From these provisions of the Criminal Code it is apparent that before a warrant can be issued there must be an information and a deposition charging a crime. Unquestionably both the information and the deposition may be combined in one affidavit providing sufficient facts are recited charging the commission of a crime.

An information made wholly on information and belief, the grounds or sources of which information and belief are not stated, is wholly insufficient to confer jurisdiction upon the magistrate to issue a warrant. (*People* v. *Cramer,* 22 App. Div. 189; *People ex rel. Brown* v. *Tighe,* 146 App. Div. 491; *People ex rel. Livingston* v. *Wyatt,* 186 N. Y. 383; *People* v. *Grogan,* 260 N. Y. 138.)

The charge before us is predicated solely upon information and belief; no facts are given whatsoever from which an inference of guilt may be drawn. As this court said in the *Cramer* case, such an information amounts to no more than a statement to the magistrate that the informant had been told by someone that defendant was guilty. In the *Grogan* case the Court of Appeals said: " The information must set out the acts constituting the crime with the same clarity as an indictment; it must state the offense and the act constituting the offense.'' There cannot be the slightest doubt that the information in this case gave the magistrate no authority whatever to order appellant's arrest.

We now come to the question as to the jurisdiction of the Children's Court to try appellant. In order to intelligently pass on that question it is necessary to examine the constitutional provisions by virtue of which the Children's Court was created.

Prior to November 8, 1921, section 18 of article VI of the State Constitution provided: " Inferior local courts of civil and criminal jurisdiction may be established by the Legislature, but no inferior local court hereafter created shall be a court of record. The Legislature shall not hereafter confer upon any inferior or local court of its creation, any equity jurisdiction or any greater jurisdiction in other respects than is conferred upon County Courts by or under this article. Except as herein otherwise provided, all judicial officers shall be elected or appointed at such times and in such manner as the Legislature may direct.''

At the general election held on November 8, 1921, the electors adopted an amendment to this section, the pertinent provisions of which are: " The legislature may establish children's courts, and courts of domestic relations, as separate courts,

or as parts of existing courts or courts hereafter to be created, and may confer upon them such jurisdiction as may be necessary for the correction, protection, guardianship and disposition of delinquent, neglected or dependent minors, and for the punishment and correction of adults responsible for or contributing to such delinquency neglect or dependency * * *.''

The amendment did not in terms repeal any provision of the section as it previously existed. It introduced the phrase '' except as herein provided '' to precede and become a part of the second sentence of the section.

Acting in accordance with the constitutional mandate the Legislature in 1922 enacted the law creating the Children's Court and defining its jurisdiction. (L. 1922, ch. 547.) Section 5 of the act (since renumbered § 6 by L. 1930, ch. 393), provided: '' Except as herein otherwise provided, the court shall have original jurisdiction to hear, try and determine all cases less than the grade of felony which may arise against any parent or other adult responsible for or who contributes to the delinquency of or neglects any child; or who is charged with any act or omission in respect to any child, which act or omission is a violation of any state law or municipal ordinance.''

The final clause of the quoted provision was declared unconstitutional by this court in *People* v. *Hopkins* (208 App. Div. 438) and was eliminated by the Legislature in the 1930 amendment. The balance of the section remains as originally.

In authorizing the creation of Children's Courts the Constitution defined and limited the jurisdiction with which the Legislature may invest them. The Legislature may not endow them with greater jurisdiction than is possessed by County Courts. In other words they are courts of inferior and limited jurisdiction; their jurisdiction will never be presumed and the facts necessary to confer jurisdiction in any particular case must affirmatively appear in the record.

The Constitution has expressly provided that the only jurisdiction which the Children's Court possesses in the case before us, as we have shown, is limited to that necessary '' for the correction, protection, guardianship and disposition of delinquent, neglected or dependent minors, and for the punishment and correction of adults responsible for or contributing to such delinquency * * *.'' Evidently it was the intention of the framers of the Constitution that the Legislature could authorize the punishment of adults as an incident to a proceeding primarily instituted for the correction, protection and guardianship of a delinquent minor.

In order to convict appellant it was necessary to plead and prove that the child in question was a juvenile delinquent and had been so adjudged and that appellant had contributed to such delinquency. These are essential allegations. There is neither allegation nor proof to that effect in this record. An examination of the information — the only pleading in this case — and waiving the objection that it is made solely on information and belief, discloses that it is wholly insufficient to give the court jurisdiction of appellant. True it is that during the trial the court stated that its own records showed that this girl had been adjudicated a *neglected child* on May 25, 1937. Appellant is not related to this child and was not involved in the former proceeding.

It is therefore clear to us that the Children's Court had no authority to try or condemn appellant. We find support for this conclusion in previous decisions of our own court. (*People* v. *Hopkins, supra; People* v. *De Pue*, 217 App. Div. 321.)

The District Attorney is relying on *People* v. *Dritz* (259 App. Div. 210) as authority for the Children's Court jurisdiction. We think that case is clearly distinguishable. There defendant was charged in the Children's Court of Westchester County with violating section 494 of the Penal Law in that he contributed to the delinquency of a fifteen-year-old child and caused the child to be adjudicated guilty of juvenile delinquency. Not only that, but in its decision the court said (p. 215): "Judgment of the Children's Court of Westchester county, finding defendant guilty of violating section 494 of the Penal Law in that he knowingly and willfully promoted or contributed to the condition which caused one James Castellano, aged fifteen, to be adjudged guilty of juvenile delinquency, affirmed."

In the case before us we have no determination that the child in question was adjudicated a juvenile delinquent or that appellant contributed thereto.

Other errors are assigned for a reversal of this judgment but in view of our conclusion it is unnecessary to discuss them.

We have examined the proof before us and it clearly indicates that appellant is guilty of a loathsome offense and should not escape unwhipped of justice.

Appellant's conviction is a nullity. He has not been placed in jeopardy within the constitutional meaning of that term, for the court was without jurisdiction to try or convict him. Hence it follows that he may be lawfully tried in a court having jurisdiction. A person is not put in second jeopardy unless his prior acquittal or conviction was before a court having juris-

diction to try him for the offense. Former jeopardy presupposes jurisdiction in the court trying the issues raised by the information and defendant's plea. (*People* v. *Connor*, 142 N. Y. 130; *People ex rel. Meyer* v. *Warden*, 269 N. Y. 426.)

In order that jeopardy may attach there must be a valid indictment, information or complaint so that where the indictment or information is so defective in form or substance that it will not support the conviction it cannot form the basis of proceedings which will put the accused in jeopardy and bar another prosecution. (22 C. J. S., Criminal Law, §§ 244, 246.)

The judgment of conviction is reversed and the information is dismissed.

BLISS, J. (concurring). I concur in the opinion of Judge HEFFERNAN for reversal and the dismissal of the information. To those reasons given by him as to why the judgment must be reversed, I desire to add the following: This trial was had before the Children's Court without a jury. There was no appearance for the informant and the court prosecuted the case against the defendant. After such prosecution the court also found the defendant guilty and sentenced him to imprisonment. Consequently the defendant did not have a trial such as is guaranteed to him by the Constitutions of our State and Nation.

"It is a fundamental rule of our common law, embodied in the Constitutions of our State and Nation, that no person may be adjudged guilty and punished upon a charge of wrongful conduct without a hearing. Decision must await the hearing of the defense. The cause may not be prejudged, and no man may be both accuser and judge. Otherwise a hearing becomes a fiction, and no fiction can destroy constitutional guaranties." (*Sharkey* v. *Thurston*, 268 N. Y. 126.)

CRAPSER and SCHENCK, JJ., concur with HEFFERNAN, J.; HILL, P. J., concurs in the result; BLISS, J., concurs in a memorandum.

Judgment of conviction reversed and information dismissed.